UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Sean Fitzpatrick, Individually And On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> MICHAEL QUEEN, THOMAS MCGREAL, JOSEPH W. LUTER, IV, MICHAEL H. COLE, SMITHFIELD FOODS, INC., SHOWCASE FOODS, INC. and PENNEXX FOODS, INC., <br><br> Defendants. | No. 2:03-cv-04318-JP <br><br><br> JURY TRIAL DEMANDED |

## [PROPOSED] ORDER

AND NOW, TO WIT, this _____ day of February, 2005, upon consideration of

Plaintiff's Motion for Class Certification seeking an order:  (1) certifying a plaintiff Class as

defined herein pursuant to Fed. R. Civ. P. 23(b)(3); (2) certifying this action as a class action on

behalf of all persons who purchased the securities of Pennexx, Inc. during the period from

August 8, 2002 through June 13, 2003, inclusive, and were damaged thereby; (3) certifying

Plaintiff Sean Fitzpatrick as the class representative; and (4) appointing Glancy Binkow &

Goldberg LLP and Chimicles & Tikellis LLP as class counsel, and Defendants' response thereto,

and after a class certification hearing,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Class Certification is

**GRANTED**.

Dated: _____, 2005

_____
The Honorable John R. Padova
United States District Judge

CHIMICLES & TIKELLIS LLP
Steven A. Schwartz
Pa. I.D. No. 50579
Kimberly M. Donaldson
Pa. I.D. No. 84116
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone:    (610) 642-8500
Facsimile:    (610) 649-3633

GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy
Michael Goldberg
Avi N. Wagner
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
**Co-Lead Counsel for Lead Plaintiff Sean Fitzpatrick
and Counsel for the Winer Family Trust**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Sean Fitzpatrick, Individually And On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>MICHAEL QUEEN, THOMAS MCGREAL, JOSEPH W. LUTER, IV, MICHAEL H. COLE, SMITHFIELD FOODS, INC., SHOWCASE FOODS, INC. and PENNEXX FOODS, INC.,<br><br>Defendants. | No. 2:03-cv-04318-JP<br><br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure

("Fed.R.Civ.P.") and Local Rule 23.1, Lead Plaintiff Sean Fitzpatrick ("Fitzpatrick" or

"Plaintiff") hereby respectfully moves this Court for an order: (1) certifying a plaintiff Class as

defined herein pursuant to Fed. R. Civ. P. 23(b)(3);  (2) certifying this action as a class action on

behalf of all persons who purchased the securities of Pennexx, Inc. during the period from

August 8, 2002 through June 13, 2003, inclusive, and were damaged thereby; (3) certifying

Plaintiff Sean Fitzpatrick as the class representative; and (4) appointing Glancy Binkow &

Goldberg LLP and Chimicles & Tikellis LLP as class counsel.

This Motion is based on the attached memorandum of law, declaration of Kimberly M.

Donaldson, and the Court's complete files and records in this action, as well as any oral argument

the Court may request on this Motion.

Dated:  February 23, 2005          Respectfully submitted,

CHIMICLES & TIKELLIS LLP


By: /s/ Kimberly M. Donaldson
    Steven A. Schwartz (PA ID No. 50579)
    Kimberly M. Donaldson (PA ID No. 84116)
    One Haverford Centre
    361 W. Lancaster Avenue
    Haverford, PA  19041
    Telephone: (610) 642-8500
    Facsimile: (610) 649-3633

    GLANCY BINKOW & GOLDBERG LLP
    Lionel Z. Glancy
    Michael Goldberg
    Avi N. Wagner
    1801 Avenue of the Stars, Suite 311
    Los Angeles, California 90067
    Telephone: (310) 201-9150
    Facsimile: (310) 201-9160

    **Co-Lead Counsel for Lead Plaintiff Sean Fitzpatrick
    and Counsel for the Winer Family Trust**

CHIMICLES & TIKELLIS LLP
Steven A. Schwartz
Pa. I.D. No. 50579
Kimberly M. Donaldson
Pa. I.D. No. 84116
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone:    (610) 642-8500
Facsimile:    (610) 649-3633

GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy
Michael Goldberg
Avi N. Wagner
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
**Co-Lead Counsel for Lead Plaintiff Sean Fitzpatrick**
**and Counsel for the Winer Family Trust**

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Sean Fitzpatrick, Individually And On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL QUEEN, THOMAS MCGREAL, JOSEPH W. LUTER, IV, MICHAEL H. COLE, SMITHFIELD FOODS, INC., SHOWCASE FOODS, INC. and PENNEXX FOODS, INC.,<br><br>Defendants. | No. 2:03-cv-04318-JP<br><br>JURY TRIAL DEMANDED |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT..................................................................................1

II.  STATEMENT OF FACTS .................................................................................2

III.  ARGUMENT.......................................................................................................3

    A.  Rule 23 Should Be Construed in Favor of Class Certification ................................3

    B.  Each of Rule 23's Requirements Are Satisfied........................................................5

        1.  Rule 23(a)'s Requirements Are Satisfied....................................................6

            (a)  Numerosity .......................................................................................6

            (b)  Commonality....................................................................................7

            (c)  Typicality .............................................................................9

            (d)  Adequacy .............................................................................11

        2.  The Class Satisfies Rule 23(b)(3)'s Requirements .....................................13

            (a)  Predominance ..................................................................................13

                 (i)  The Falsity of the Statements and Omissions at Issue .......14

                 (ii)  The Materiality of the Statements at Issue.........................15

                 (iii)  The "In Connection With" Requirement ...........................15

                 (iv)  Scienter ............................................................................15

                (v)  Reliance and Causation .........................................................16

                      a.  The Fraud-On-The Market Theory ........................17

                      b.  The Affiliated Ute Presumption.............................21

             (b)  A Class Action Is Superior To Numerous Individual Actions ........22

IV.  CONCLUSION..................................................................................................23

## TABLE OF AUTHORITIES

### Cases

*In re Advanta Corp. Sec. Litigation*,
  180 F.3d 525 (3rd Cir. 1999) ........................................................................................16

*In re Aetna, Inc.*,
  1999 WL. 624516 (Padova) (E.D.Pa.,1999)................................................................12, 15

*In re Aetna, Inc. Sec. Litigation*,
  34 F. Supp. 2d 935 (E.D. Pa. 1999) ................................................................................14

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972)............................................................................................17, 21, 22

*In re Alco Intern. Group Inc. Sec. Litigation*,
  158 F.R.D. 152 (S.D. Cal. 1994) .......................................................................................7

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997)..........................................................................................................13

*Arch v. The American Tobacco Co., Inc.*,
  175 F.R.D. 469 (E.D. Pa. 1997)........................................................................................10

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994).......................................................................................5, 8, 10

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988)..........................................................................................................17

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ...........................................................................................14, 16

*Bradburn Parent/Teacher Stores, Inc. v. 3M*,
  No. Civ.A.02-7676, 2004 WL. 1842987 (E.D. Pa. Aug. 18, 2004)...............................5, 11

*In re Centocor, Inc. Sec. Litigation*,
  1999 WL. 54530 (E.D. Pa. Jan. 27, 1999) ..........................................................6, 8, 10, 12

*In re Cephalon Securities Litigation*,
  1998 WL. 470160 (E.D. Pa. Aug. 12, 1998) ............................................................4, 9, 16

*In re Corel Corp. Sec. Litigation*,
  206  F.R.D. 533 (E.D. Pa. 2002).................................................................................5, 12

*Cullen v. Whitman Medical Corp.*,
188 F.R.D. 226 (E.D. Pa.1999)...........................................................................................9

*Duffy v. Massinari*,
202 F.R.D. 437 (E.D. Pa. 2001).........................................................................................7

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).............................................................................................................4

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir.1985).....................................................................................4, 16, 22

*In re First RepublicBank Sec. Litigation*,
CIV. A. Nos. 3-88-0641-H, 3-88-1251-H, 1989 WL. 108795 (emphasis supplied)........11

*Fitch v. Radnor Industries, Ltd.*,
No.Civ.A. 90-2084, 1990 U.S. Dist. LEXIS 13568...........................................................10

*Fox v. Equimark*,
Civ. No. 90-1504, 1994 WL. 560994 (W.D. Pa. July 18, 1994) ...................................8, 10

*Friedman v. Lansdale Parking Authority, No. CIV. 92-7257*,
1993 WL. 338174 (E.D. Pa. Aug. 30, 1993) ....................................................................21

*Gaskin v. Commonwealth of Pa.*,
No. 94-CV-4048 (E.D.Pa., July 24, 1995)...........................................................................3

*Green v. Wolf Corp.*,
406 F.2d 291 (2nd Cir. 1968)............................................................................................14

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
903 F.2d 186 (3rd Cir.1990) ............................................................................................21

*In re IKON Office Solutions, Inc.*,
277 F.3d 658 (3rd Cir. 2002) ...........................................................................................14

*Johnston v. HBO Film Management Inc.*,
265 F.3d 178 (3d Cir. 2001).........................................................................................8, 21

*Kahan v. Rosenstiel*,
424 F.2d 161 (3d Cir. 1970)..............................................................................................22

*Kromnick v. State Farm Ins. Co.*,
112 F.R.D. 124, 128 (E.D. Pa. 1986)..................................................................................8

*Lachance v. Harrington, No. CIV. A. 94-CV-4383*,
  1996 WL 210806 (E.D. Pa. Apr. 30, 1996) .................................................................21

*Lehocky v. Tidel Technologies, Inc.*,
  220 F.R.D. 491 (S.D.Tex. 2004) .................................................................................6

*In re Mellon Bank Shareholders Litigation*,
  120 F.R.D. 35 (W.D. Pa. 1988) ................................................................................10

*Miller v. Mackey Int'l*,
  452 F.2d 424, 427 (5th Cir.1971) ...............................................................................4

*Moskowitz v. Lopp*,
  128 F.R.D. 624 (E.D. Pa. 1989) ..............................................................................8, 9

*National Organization of Disability v. Tartaglione*,
  2001 WL 1258089, *1 (Padova, J.) (E.D. Pa. 2001) ...............................................3, 10

*Neuberger v. Shapiro*,
  Civ. A 97-7947, 1998 WL 826980 (E.D. Pa. Nov. 25, 1998) ...................................14, 15

*Newton v. Merrill, Lynch, Pierce, Fenner & Smith*,
  259 F.3d 154, 182 n. 27 (3d Cir.2001)..........................................................................5

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)...............................................................................................3, 22

*Piel v. National Semiconductor Corp.*,
  86 F.R.D. 357 (E.D. Pa. 1980)..................................................................................14

*In re Prudential Insurance Co. of America Sales Practices Litigation*,
  962 F. Supp. 450 (D.N.J. 1997) ................................................................................16

*In re Regal Communications Corp. Sec. Litigation*,
  No. 94-179, 1995 WL 550454 (E.D. Pa. Sept. 14, 1995)...........................................3, 6

*In re Rent-Way Sec. Litigation*,
  218 F.R.D. 101 (E.D. Pa. 2003)..............................................................................4, 11

*Rosen v. Fidelity Fixed Income Trust*,
  169 F.R.D. 295 (E.D. Pa. 1995)............................................................................16, 22

*SEC v. Zandford*,
  535 U.S. 813 (2002)................................................................................................15

*Sheehan v. Little Switzerland, Inc.*,
136 F. Supp. 2d 301 (D.Del. 2001)...................................................................................21

*Smith v. Dominion Bridge Corporation*,
1998 WL. 98998 (E.D. Pa. March 6, 1998)...............................................................3, 6, 13

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001)................................................................................................7

*T.B. v. School District of Philadelphia, No. Civ.A. 97-5453*,
1997 WL. 786448 (E.D. Pa. Dec. 1, 1997)....................................................................7, 10

*Takeda v. Turbodyne Techs. Inc.*,
67 F. Supp. 2d 1129 (C.D. Cal. 1999) ..............................................................................12

*In re Visa Check/MasterMoney Antitrust Litigation*,
280 F.3d 124 (2d Cir. 2001)................................................................................................4

*In re Worldcom Sec. Litigation*,
219 F.R.D. 267 (S.D.N.Y. 2003) .......................................................................................11

*Zeffiro v. First Pennsylvania Banking and Trust Co.*,
96 F.R.D. 567 (E.D. Pa. 1983)..........................................................................................11

*Zeidman v. J. Ray McDermott Co.*,
651 F.2d 1030 (5th Cir.1981) ..............................................................................................6

## **Statutes**

Fed. R. Civ. P. 23(a) ................................................................................................. *passim*

## **Miscellaneous**

5 James Wm. Moore, et al., Moore's Federal Practice 23.25 [4][b][ii] (3d ed. 2003))..................11

## I.    PRELIMINARY STATEMENT

Pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") and Local Rule 23.1, Lead Plaintiff Sean Fitzpatrick ("Plaintiff") hereby submits this memorandum of points and authorities in support of his Motion for Class Certification.

Plaintiff seeks certification of a class consisting of all persons, without geographic limitation, who purchased Pennexx Foods, Inc. ("Pennexx" or the "Company") common stock in the open market during the period from August 8, 2002 through June 13, 2003, inclusive (the "Class Period"), and who were damaged by Defendants' alleged violations of Section 10(b) and/or 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder (the "Class"). Excluded from the Class are Defendants, their legal representatives, heirs, successors and predecessors in interest, affiliates, assigns, and any entities in which the Defendants (or any of them) had a controlling interest in during the Class Period. The Class, Plaintiff, as its proposed representative, and proposed class counsel all satisfy the requirements enumerated under Fed. R. Civ. P. 23(a) of numerosity, typicality, commonality and adequacy of representation. As discussed in detail below, the members of the Class number in the hundreds or thousands and are geographically dispersed. Plaintiff's injuries, which resulted from Defendants' common course of conduct, are identical to those of the Class, and Plaintiff suffers from no conflict of interest that would impede the vigorous prosecution of this Action. Finally, proposed class counsel has the requisite experience to successfully prosecute this matter as a class action.

1

In addition, this Action satisfies Rule 23(b)(3)'s requirements of predominance and superiority. Plaintiff can prove each of the elements of his securities fraud and control person claims through common proof. Similarly, proof of Smithfield's liability as a successor in interest to Pennexx can be proven on a classwide basis. Thus, common questions of law and fact predominate over any individual issues.

Finally, a class action is a superior means of litigating class member claims because it is easily manageable, allows investors who would otherwise be unable to pursue individual claims to obtain redress, and least taxes judicial resources. Such considerations have long been recognized as militating in favor of class certification.

## II.    STATEMENT OF FACTS

On September 27, 2004 this Court issued an Order and Memorandum, filed September 28, 2004, granting in part and denying in part Defendants' motions to dismiss the Amended Complaint (the "Order").[1]  In the Order, the Court found that the Winer Family Trust could proceed with claims against the Defendants based on an August 14, 2002 press release which misleadingly announced that former Pennexx CFO George Pearcy's departure from the Company was due to "personal reasons".  The Court also allowed claims based on January 30, 2003 and March 31, 2003 press releases which contained allegedly false and misleading representations concerning the operation and renovations of the Tabor Facility. Order at 38-50.

Defendants' liability for these statements is premised on theories of primary violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5

---

[1]      Because the Court denied, on January 18, 2005, the Winer Family Trust's motion to amend that complaint, the Amended Complaint remains the operative pleading in this matter.

2

thereunder (defendants Queen and Pennexx), control person liability under Section 20(a) of the Exchange Act (all defendants) and successor liability (defendants Smithfield and Showcase).

Co-Lead Counsel was retained by Lead Plaintiff Sean Fitzpatrick who purchased 7,000 shares and 3,000 shares of Pennexx's stock on September 30, 2002 and May 1, 2003, respectively. *See* Exhibit A to Declaration of Kimberly M. Donaldson Submitted in Support of the Class Certification Motion ("Donaldson Declaration"), Sworn Certification of Sean Fitzpatrick. Sean Fitzpatrick was appointed Lead Plaintiff pursuant to this Court's February 10, 2005 Order and now seeks to be appointed as Class Representative.

## III.    ARGUMENT

### A.    Rule 23 Should Be Construed in Favor of Class Certification

The United States Supreme Court has long recognized the critical role of the class action device in our legal system. *E.g. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that class actions allow the "plaintiff to pool claims which would be uneconomical to litigate individually . . . . [M]ost of the plaintiffs would have no realistic day in Court if a class action were not available."). In the same vein, "[t]he Court of Appeals for the Third Circuit has adopted a liberal construction of Rule 23 when considering shareholder suits." *In re Regal Communications Corp. Sec. Litig.,* No. 94-179, 1995 WL 550454, at *3 (E.D. Pa. Sept. 14, 1995) (Giles, J.); *Smith v. Dominion Bridge Corporation*, 1998 WL 98998, *2 (E.D. Pa. March 6, 1998) (Reed, J.).

"When doubt exists concerning certification of the class, the court should err in favor of allowing the case to proceed as a class action. *National Organization of Disability v. Tartaglione*, 2001 WL 1258089, *1 (Padova, J.) (E.D. Pa. 2001)(*citing Gaskin v.*

3

*Commonwealth of Pa.,* No. 94-CV-4048 (E.D.Pa., July 24, 1995), 23 IDELR 61 (*citing Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985)).

As the Court recently noted, a motion for class certification is not an occasion to consider a plaintiff's underlying case or any affirmative defenses a defendant could assert against it. *Bradburn Parent/Teacher Stores, Inc. v. 3M,* No. Civ.A.02-7676, 2004 WL 1842987, at \*2 (E.D. Pa. Aug. 18, 2004)(Padova, J.); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974); *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 135 (2d Cir. 2001); *In re Rent-Way Sec. Litig.,* 218 F.R.D. 101, 113-14 (E.D. Pa. 2003); *In re Cephalon Securities Litigation,* 1998 WL 470160, at \*3 (E.D. Pa. Aug. 12, 1998) (Green, J.) (determination of the merits of claims of Lead Plaintiffs "is not appropriate for resolution at the class certification stage."). It is within the District Court's discretion to certify an action as a class action, but such determination only requires an inquiry into the requirements of Fed. R. Civ. P. 23, and not at whether Plaintiffs will prevail on the merits of the Action. *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985). In determining whether the class should be certified, the Court examines only the requirements of Rule 23 and does not look at whether the Plaintiffs will prevail on the merits. *Bradburn Parent/Teacher Stores, Inc. v. 3M,* No. Civ.A.02-7676, 2004 WL 1842987, at \*2 (E.D. Pa. Aug. 18, 2004)(Padova, J.) (*citing Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1973) (" 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'") (*quoting Miller v. Mackey Int'l,* 452 F.2d 424, 427 (5th Cir.1971)).

**B.**     **Each of Rule 23's Requirements Are Satisfied**

Before a class may be certified pursuant to Fed. R. Civ. P. 23, the plaintiff "'must

establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met'" so that

"'the court can assure, to the greatest extent possible, that the actions are prosecuted on behalf of

the actual class members in a way that makes it fair to bind their interests.'" *Bradburn*

*Parent/Teacher Stores, Inc. v. 3M*, No. Civ.A.02-7676, 2004 WL 1842987, at *2 (E.D. Pa. Aug.

18, 2004)(Padova, J.)(*quoting Baby Neal v. Casey,* 43 F.3d 48, 55 (3d Cir.1994) and *quoting*

*Newton v. Merrill, Lynch, Pierce, Fenner & Smith,* 259 F.3d 154, 182 n. 27 (3d Cir.2001)).

To obtain class certification, Plaintiff and the Class must meet each of the four

requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is

impracticable ("numerosity"); (2) there are questions of law or fact common to the class

("commonality"); (3) the claims or defenses of the representative parties are typical of the claims

or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately

protect the interests of the class ("adequacy").  *In re Corel Corp. Sec. Litig.*, 206 F.R.D. 533,

538 (E.D. Pa. 2002) (Brody, J.).

If the four prerequisites of Rule 23(a) are met, plaintiffs must also demonstrate that the

action qualifies for class action treatment under one of three criteria set forth in Rule 23(b).

Here, Plaintiff moves for class certification under Rule 23(b)(3), which requires that "questions

of law or fact common to members of the class predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for the fair and

efficient adjudication of the controversy".  Fed. R. Civ. P. 23(b)(3).  As will be demonstrated

below, Plaintiff has met his burden of showing that the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3) are satisfied.

### 1.   Rule 23(a)'s Requirements Are Satisfied

#### (a)   Numerosity

In this case, the numerosity requirement is easily satisfied. Courts within this and other circuits have recognized a presumption that the numerosity requirement is satisfied when a class action involves a publicly traded security. *See, e.g., Lehocky v. Tidel Technologies, Inc.*, 220 F.R.D. 491, 499 (S.D.Tex. 2004)(*quoting Zeidman v. J. Ray McDermott Co.*, 651 F.2d 1030, 1039 (5th Cir.1981) (numerosity element satisfied where "hundreds of thousands or even millions of shares of the security were traded.")); *In re Regal Communications Corp. Sec. Litig.*, 1995 WL 550454, at *4.

Here, the Class is so numerous that joinder of all members is impracticable. "There are no specific standards regarding class size and it is not necessary for a plaintiff to allege the exact number of class members to satisfy the numerosity requirement." *In re Centocor, Inc. Securities Litigation*, 1999 WL 54530 at *1 (E.D. Pa. Jan. 27, 1999); *See Smith v. Dominion Bridge Corporation*, 1998 WL 98998 at *3 ("there is no magic number that satisfies this requirement and plaintiff is not required to allege the exact number or identities of the class members")

In the instant Action, during the Class Period, Pennexx had more than 26 million shares outstanding and while the exact number of either record or beneficial shareholders is unknown to plaintiffs at this time, even the 175 holders of record of Pennexx stock - a number which is far smaller than the number of actual holders in street name -  is more than sufficient to satisfy the

numerosity requirement.[2]  *Cf. Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)

("generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40,

the first prong of Rule 23(a) has been met"); *Duffy v. Massinari*, 202 F.R.D. 437, 442 (E.D. Pa.

2001) (wherein the Court held that proposed class of 129 individuals satisfied the numerosity

requirement); *T.B. v. School Dist. of Philadelphia*, No. Civ.A. 97-5453, 1997 WL 786448, at *3

(E.D. Pa. Dec. 1, 1997) (wherein the Court held that 70 class members all resident in the City of

Philadelphia satisfied the numerosity requirement). Moreover, during the Class Period,

approximately 18,177,300 shares were traded.  *See* Exhibit B to Donaldson Decl., Spreadsheet,

Total Shares Traded During Class Period (total of average daily volume for Class Period)

compiled from Bloomberg.

Joinder also is impracticable on other grounds, such as the relatively small size of each

class members' claim, the geographical diversity of the members of the Class and the nature of

claims alleged, i.e., securities fraud, which lends itself well to class actions.  *In re Alco Intern.*

*Group Inc. Sec. Litig.*, 158 F.R.D. 152, 153-54 (S.D. Cal. 1994) ("[w]hether or not the class

numbers in the hundreds or in the thousands, joinder is clearly impractical where a large group of

people, dispersed all across the country, are involved").  Thus, for all the foregoing reasons, the

numerosity requirement of Rule 23(a)(1) is easily satisfied here.

### (b)   Commonality

There exist questions of law and fact common to the Class.  A common question is "one

which arises from 'common nucleus of operative facts regardless of whether the underlying facts

---

[2]      In its Form 10-K for Fiscal 2001, at 13 (Exhibit B to the Donaldson Declaration),
Pennexx stated that "On March 25, 2002... according to the Company's transfer agent there were
175 holders of record of Pennexx Common Stock."

7

fluctuate over the Class Period and vary as to individual claimants." *In re Centocor, Inc. Sec. Litig.*, 1999 WL 54530, at *2 (*quoting Kronnick v. State Farm Ins. Co.*, 112 F.R.D. 124, 128 (E.D. Pa. 1986)).

Like numerosity, the commonality requirement has been construed liberally in securities fraud litigation. *See Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D. Pa. 1989) (Bechtle, J.). It is satisfied when a proposed class representative and the class share as little as one common question of law and fact. *See Johnston v. HBO Film Management Inc.*, 265 F.3d 178, 184 (3d Cir. 2001); *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

The commonality requirement under Rule 23(a)(2) is easily satisfied in this action. The existence, nature and significance of defendants' omissions and misrepresentations -- the most important issues in a securities fraud case -- are issues common to all class members, and the Class is bound by a common interest in determining whether defendants' conduct is actionable. *Fox. v. Equimark*, Civ. No. 90-1504, 1994 WL 560994 at *3 (W.D. Pa. July 18, 1994) (questions of whether defendants violated securities laws and whether defendants participated in a common course of conduct satisfy commonality requirement). Among the questions of law and fact common to the Class in this action are:

    (i)    whether defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act and SEC Rule 10b-5;

    (ii)    whether the federal securities laws were violated by defendants' acts and omissions as alleged herein;

    (iii)    whether defendants participated in and pursued the common course of conduct and fraudulent scheme complained of herein;

(iv)     whether the documents, reports, filings, releases and statements disseminated to the investing public during the Class Period omitted and/or misrepresented material facts about the termination of George Pearcy and the Tabor Facility

(v)      whether defendants acted knowingly or recklessly in omitting to state and/or misrepresenting material facts;

(vi)     whether the market price of Pennexx common stock securities was artificially inflated during the Class Period due to the non-disclosures and/or misrepresentations complained of in the Amended Complaint;

(vii)    whether Lead Plaintiffs and the other members of the Class have sustained damages and, if so, the appropriate measure thereof;

(viii)   whether Defendants are liable as control persons; and

(ix)     whether Smithfield and Showcase are liable as successors to Pennexx.

As the court commented in *Moskowitz*, 128 F.R.D. at 629, allegations such as these that a Company and its officers and directors "omitted material information from its public disclosures thereby inflating the price of . . . stock is the paradigmatic common question of law or fact in a securities fraud class action." Thus, the commonality requirement is satisfied.

### (c)     Typicality

The typicality requirement of Rule 23(a)(3) is satisfied if a plaintiff's claims arise from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory. "Even significant factual differences will not preclude a finding of typicality where there is a strong similarity of legal theories." *Cullen v. Whitman Medical Corp.,* 188 F.R.D. 226, 230 (E.D. Pa.1999) (Brody, J.); *In re Cephalon*, 1998 WL 470160 at *2;

9

*See Baby Neal v. Casey*, 43 F.3d at 58 (typicality requirement is satisfied despite the existence of pronounced factual distinctions between the claims of the named plaintiffs and the claims of the proposed class).

Here, Plaintiff's claims are typical of those of the Class in that the proof that Plaintiff will use to prevail on his claims will prove the claims of the rest of the Class. *In re Centocor, Inc.,* 1999 WL 54530 at *2 (holding typicality requirement satisfied where the "'litigation of the named plaintiffs' claims can reasonably be expected to advance the interests of absent class members.'"); *Arch v. The American Tobacco Co., Inc.,* 175 F.R.D. 469, 478 (E.D. Pa. 1997) (same); *Fox. v. Equimark,* 1994 WL 560994 at *4 ("All purchasers of stock during a class period share a common interest in showing that the stock was unlawfully inflated."). As reflected in his sworn certification, on file with the Court and appended as Exhibit A to the Donaldson Decl., Sean Fitzpatrick purchased Pennexx common stock following the false and misleading statements that are the subject of this litigation and was damaged thereby.

Defendants may assert that Plaintiff Fitzpatrick is not typical because he is subject to unique defenses or because of certain factual differences. "[R]ule 23(a)(3) requires typicality of the named plaintiffs' claims, not defenses that may be raised." *Fitch v. Radnor Industries, Ltd.,* No.Civ.A. 90-2084, 1990 U.S. Dist. LEXIS 13568, at *11 (citing *In re Mellon Bank Shareholders Litigation,* 120 F.R.D. 35, 37-38 (W.D. Pa. 1988)). Here, Plaintiff's claims and the members of the proposed Class are typical in that they challenge the same course of conduct by Defendants and factual differences, if any, mentioned by Defendants would not warrant any other finding than that Plaintiff has satisfied the typicality requirement. *See National Organization of Disability v. Tartaglione,* 1258089, *3 -4  (E.D.Pa. 2001)(Padova, J)(*citing T.B. v. School Dist.*

10

*of Philadelphia,* 1997 WL 786448, at *5).   Plaintiff, like all public investors, was "misled by the same operative facts."   *In re First RepublicBank Sec. Litig.,* CIV. A. Nos. 3-88-0641-H, 3-88-1251-H, 1989 WL 108795, at *12 (emphasis supplied); *accord Zeffiro v. First Pennsylvania Banking and Trust Co.,* 96 F.R.D. 567, 569-70 (E.D. Pa. 1983)(observing that if the named plaintiff and class members have an interest in prevailing on similar legal claims "particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a Lead Plaintiff may not render his or her claims atypical").   Indeed, in *First RepublicBank* the court allowed a director of the defendant-corporation's subsidiary to serve as a class representative on behalf of a sub-class, noting that the potential of unique defenses did not make his claim atypical. *Id.* at *14.

Speculative arguments concerning investor typicality are routinely rejected by the courts in this context. *See In re Rent-Way Sec. Litig.,* 218 F.R.D. at 113-14; *In re Worldcom Sec. Litig.,* 219 F.R.D. 267, 281-82 (S.D.N.Y. 2003) (rejecting defendants' assertions of reliance on investment advisors or individual conversations with management, rather than on defendants' materially false and/or misleading statements); *cf. Bradburn Parent/Teacher Stores, Inc. v. 3M,* 2004 WL 1842987, at *4 (*quoting* 5 James Wm. Moore, et al., Moore's Federal Practice 23.25 [4][b][ii] (3d ed. 2003))("'[M]ost courts hold that [a] conflict [between class members] must be more than merely speculative or hypothetical' before a named representative can be deemed inadequate")).   Plaintiff satisfies the typicality requirement.

### (d)   Adequacy

Plaintiff can and will adequately represent the Class.   In order to establish adequacy, a plaintiff (1) must not have any conflict that might prevent him from representing the interests of

11

the Class and (2) his counsel must be competent to conduct a class action. *In re Corel Corp. Sec. Litig.*, 206 F.R.D. at 542. The requirements of fair and adequate representation in Rule 23(a)(4) are "designed to ensure that absentee class members' interests are fully pursued" by class representatives actually before the court. *In re Centocor,* 1999 WL 54530 at *3.

Here, both prongs of the adequacy requirement of Rule 23(a)(4) are satisfied. First, there are no conflicts of interest between Plaintiff Sean Fitzpatrick and the other members of the Class. As stated above, Plaintiff, like the other Class members, suffered damages as a result of Defendants' alleged unlawful conduct during the Class Period, and Plaintiff will have to prove the same wrongdoing as the absent Class members in order to establish Defendants' liability. Plaintiff has demonstrated his zeal in pursuing this litigation by following this litigation and timely intervening as a lead plaintiff when necessary.

In addition, Plaintiff Fitzpatrick signed under penalty of perjury a certification that he did not purchase his Pennexx stock at the request of Plaintiffs' counsel, that he was willing to appear at trial and did not expect to recover any more than their pro rata share of recovery. Exhibit , Donaldson Decl. *See In re Aetna, Inc.*, 1999 WL 624516, *1 (Padova) (E.D.Pa.,1999)

Second, Plaintiff has retained attorneys that are qualified, experienced and able to conduct this litigation. Plaintiff's counsel, the law firms of Glancy Binkow & Goldberg LLP and Chimicles & Tikellis LLP, have extensive experience litigating complex securities class actions and similar matters. Exhibits C & D to Donaldson Dec.; *cf. Takeda v. Turbodyne Techs. Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999) (designating the Glancy firm as lead counsel, the court noted its experience in class action litigation and securities litigation). Given the lack of conflict

12

and the retention of competent counsel, Plaintiff and his counsel can and will adequately

represent the Class.

### 2.     The Class Satisfies Rule 23(b)(3)'s Requirements

In addition to meeting the requirements of Rule 23(a), a plaintiff seeking class

certification is also required to satisfy Rule 23(b)(3), which states:

>        (b)     Class Actions Maintainable.  An action may be maintained as a
> class action if the prerequisites of subdivision (a) are satisfied, and in addition:

*    *    *

>        (3)     the court finds that the questions of law or fact common to the
> members of the Class predominate over any questions affecting only individual
> members, and that a class action is superior to other available methods for the fair
> and efficient adjudication of the controversy.

Rule 23(b)(3) is satisfied in this action because (a) questions of law or fact common to the

class members predominate over any questions affecting only individual class members

("predominance") and (b) a class action is superior to other available methods for the fair and

efficient adjudication of this controversy ("superiority").

### (a)     Predominance

"Although Rule 23(b)(3) requires that common issues of law and fact predominate, it

does not require that there be an absence of any individual issues." *Smith*, 1998 WL 98998 at *5.

 The United States Supreme Court has stated that "[p]redominance is a test readily met in certain

cases alleging consumer or *securities fraud* or violations of the antitrust law." *Amchem*

*Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (emphasis added).  In the instant litigation,

Plaintiff can satisfy all of the elements of a securities fraud case through common proof, thus

common questions of law and fact predominate over any individual issues.

13

To state a claim under 10(b) of the Exchange Act and Rule 10b-5 thereunder, a party must prove that a defendant made: (i) a misstatement or omission (ii) of material fact (iii) in connection with the purchase or sale of a security (iv) made with scienter (v) on which the plaintiff relied (vi) that proximately caused the plaintiffs' injuries. *See In re IKON Office Solutions, Inc.,* 277 F.3d 658, 666 (3rd Cir. 2002). As set forth below, each of these elements can or must be proven on a classwide basis, causing common issues to predominate any individual questions.[3]

### (i)    The Falsity of the Statements and Omissions at Issue

As set forth in the statement of facts, *supra*, three misstatements and omissions remain the subject matter of this action. Proof of their falsity turns on the true reasons for George Pearcy's termination and the true condition of the Tabor Facility in January and March of 2003, all matters that will be resolved on a classwide basis, as they do not concern any Plaintiff or any other class member. *See, e.g. Neuberger v. Shapiro,* Civ. A. 97-7947, 1998 WL 826980 at *4 (E.D. Pa. Nov. 25, 1998)("Evidentiary issues as to misrepresentations and materiality will be substantially identical for all class members.").[4]

---

[3]    Similarly, proof of Defendants' liability under 20(a) of the Exchange Act and Smithfield and Showcase's liability as a successor to Pennexx are unaffected by any differences between Plaintiff and the Class and will be proven on a classwide basis.

[4]    That the claims involve three separate representations over a ten month period poses no bar to certification. *See Blackie v. Barrack,* 524 F.2d at 894 (material misrepresentations contained in forty-five documents issued over a two year period); *Green v. Wolf Corp.*, 406 F.2d 291, 294 (2nd Cir. 1968) (material misrepresentations contained in three prospectuses issued over the course of two and one-half years); *Piel v. National Semiconductor Co*rp., 86 F.R.D. 357, 368 (E.D. Pa. 1980) ("it should not be permissible for a defendant to escape the possible effect of a class action merely because the wrong alleged was elaborately conducted over a long period of time and by a variety of different activities.").

14

### (ii)   The Materiality of the Statements at Issue

Like the issue of falsity, the issue of materiality must be resolved on a classwide basis.

As the Court recognized in its Order on Defendants' motions to dismiss, the issue presented by

this requirement is "whether there is a substantial likelihood that the disclosure would have been

viewed by the reasonable investor as having significantly altered the total mix of information

available to that investor." Order at 9 (*quoting In re Aetna, Inc. Sec. Litig.,* 34 F. Supp. 2d 935,

945 (E.D. Pa. 1999) (internal quotations omitted) (emphasis supplied). Because the focus is on

the reasonable investor as opposed to some individual standard, questions of materiality must be

adjudicated on a classwide basis. *Neuberger, supra, id.*

### (iii)   The "In Connection With" Requirement

Proof that the misstatements and omissions at issue were made "in connection with" the

purchase and sale of securities must also be proven on a classwide basis. Adjudication of their

falsity here on a classwide basis would plainly facilitate the market integrity which Congress

sought to restore by imposing the "in connection with" requirement. *Cf. SEC v. Zandford*, 535

U.S. 813, 822 (2002) (recognizing that "the interest in preserving the integrity of the securities

markets was one of the purposes animating [the securities laws]" and reading the "in connection

with" requirement "to mean that Congress meant to bar deceptive devices and contrivances in the

purchase or sale of securities whether conducted in the organized markets or face to face.")

(internal quotations omitted).

### (iv)   Scienter

To establish scienter, the Class must prove that defendants' misstatements and omissions

presented "a danger of misleading buyers or sellers that is either known to the defendant or is so

obvious that the actor must have been aware of it." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3rd Cir. 1999). Because the factual inquiry into Defendants' scienter rests on their state of mind, not the acts or impressions of any class member, it must be adjudicated on a classwide basis.

### (v) Reliance and Causation

Because common issues clearly and unquestionably predominate as to the first four elements of Plaintiff's claim, under the law of this Circuit the Court need not analyze the matter any further. *See e.g., Eisenberg, 766* F.2d at 786-87 (although individual issues of reliance may exist, these issues do not predominate over common issues of fact or law); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)(individual questions concerning the amount of damages and reliance are not impediments to class action treatment); *In re Cephalon Securities Litigation*, 1998 WL 470160, at *4 ("although individual questions may exist as to reliance and damages, these individual questions do not predominate over the common questions of whether the defendants made fraudulent statements or omissions in violation of federal securities laws which caused the price of . . . stock to become artificially inflated during the Class Period"); *In re Prudential Ins. Co. of America Sales Practices Litig.*, 962 F.Supp. 450, 515 (D.N.J. 1997)

("courts generally reject the argument that the issue of reliance undermines the predominance of common issues because reliance is an issue secondary to establishing the fact of the defendant's liability"); *Rosen v. Fidelity Fixed Income Trust*, 169 F.R.D. 295, 301 (E.D. Pa. 1995) (wherein the Court held that "individual questions that may be raised by this litigation, such as knowledge and damages, do not predominate over the central issue in the case, namely, whether the registration statements contained material misstatements or omissions.").

16

Nonetheless, because Plaintiff submits that reliance and causation can also be proven on a classwide basis, he will address the method of proof for these elements as well. In order to prove the issues of reliance and causation on a classwide basis, plaintiffs will rely on the "fraud-on-the-market theory" adopted by the Supreme Court in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) as well as the presumption of reliance articulated in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) which attaches to material omissions.

### a.     The Fraud-On-The Market Theory

In adopting the fraud-on-the-market theory, the Supreme Court recognized that in efficient markets, the market (not the individual) serves as a buyer's agent in pricing a security, "informing him that given all the information available to it, the value of the stock is worth the market price." *Basic*, 485 U.S. at 244.  Because of the market's important role in pricing securities, the Supreme Court concluded that "where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed." *Id.* at 247.

As the Court has previously noted, Plaintiff has adequately pled facts concerning the way in which the market for Pennexx commons stock promptly reflected new information which the Company announced.  The pleading of these facts demonstrates that the market for Pennexx common stock was efficient during the Class Period. See Order at 8 n.3 ("the Court concludes that by alleging, *inter alia*, Pennexx's stock price sharply rose or fell in response to unexpected disclosures by the Company, Lead Plaintiff has adequately pled facts that give rise to an inference that Pennexx stock traded in an efficient market.") .

17

At all relevant times, the market for Pennexx securities was an efficient market for the following reasons, among others:

      (a)     Pennexx's stock met the requirements for listing, and was listed and actively traded on a highly efficient and automated market;

      (b)     As a regulated issuer, Pennexx filed periodic public reports with the SEC;

      (c)     Pennexx regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the Pennexx website, national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

      (d)     Pennexx was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

Moreover, Pennexx's stock was traded on an open market in which a large number of persons buy and sell. In a February 8, 2002 Pennexx press release, Defendant Queen was quoted as stating "Trading our common stock on the OTC Bulletin board is a significant milestone for Pennexx and enable us to reach a broader investor audience." In fact, Pennexx's average daily and weekly trading volumes during the Class Period support a presumption of an efficient market. The average daily trading volume for the Class Period was approximately 83,382 shares per day. *See* Exhibit E, Donaldson Decl., Bloomberg Daily Trading Volume and Pricing Chart, with daily volume rounded to the nearest hundred. The average weekly trading

18

volume for the Class Period was approximately 441,697 shares per week, calculated on a Friday.
*See* Exhibit F, Donaldson Decl., Bloomberg Weekly Trading Volume and Pricing Chart, with
weekly volume rounded to the nearest hundred.  In addition, Pennexx's stock was traded on a
developed and efficient market with relatively high level of activity and frequency, for which
trading information, including price and volume, is widely available, and which rapidly reflects
new information in price:

      (a)    According to the OTC Bulletin Board website,

(http://www.otcbb.com/aboutOTCBB/overview.stm#abouthistory, last visited February
23, 2005, attached as Exhibit G to Donaldson Decl.), the OTC Bulletin board ("OTCBB")
provides access to more than 3,300 securities, includes more than 230 participating
Market Makers, electronically transmits real-time quote, price and volume information in
domestic securities, foreign securities and ADRs, and displays indications of interest and
prior-day trading activity in DPPs.

      (b)    The following OTCBB data is disseminated through market data vendor
terminals and Web sites for display to customers worldwide:   a) dynamic last-sale and
volume information for domestic securities, foreign securities and ADRs; b) end-of-day
high, low, close, and volume on DPPs; c) bids, offers, and indications of interest
displayed by specific Market Makers; d) inside quotes for domestic securities, foreign
securities and ADRs when available; e) indicative quotes for DPPs; and f) Market
Makers' telephone numbers.

    In fact, there was a cause and effect relationship between unexpected corporate events
and/or financial releases and an immediate response in Pennexx's stock price:

(a)    Investors reacted highly favorably to the news stated in the February 8, 2002, press release, including the news about a "growing demand" for case-ready meat, the Company's purportedly "excellent" business prospects and Smithfield Foods' "$36 million commitment" – an amount that should eliminate any liquidity issues for several years, based on the Company's historicals. By the close of trading on that day, Pennexx stock had shot upward more than twenty-six percent (26%) as a result of this news.

(b)    Pennexx's response to the "Dateline NBC" report was greeted positively by the market. Defendants' statements concerning the Company's favorable prospects and the purchase of a new, "state-of-the-art" facility specifically to meet "increased demand and accommodate future growth" raised the price of Pennexx stock more than ten percent (10%) by the end of trading on May 22, 2002, the same day that Pennexx disseminated the press release.

(c)    Defendants' February 18, 2003, press release--claiming, among other things, "escalating" demand, expanded capacity at the Company's new processing plant and Pennexx's purported ability to "capitalize on the inexorable transition to case-ready meat" – sent Pennexx stock up more than six percent (6%) over the previous day's close.

(d)    Investor reaction to the news of Pennexx's financial problems and its shocking default under the Company's Credit Agreement with Smithfield was sharply negative on the day of the announcement, May 8, 2003.  By the close of trading on May 8, 2003, Pennexx's stock price had plunged more than fourteen percent (14%) from the previous day's close as a result of this news.

20

(e)     As a result of this news contained in Pennexx's May 15, 2003 press

release concerning the defaults, by the close of trading that day Pennexx stock dropped

approximately thirty-two percent (32%) as a result of this news.

Based on the foregoing, the market for Pennexx's securities promptly digested current

information regarding Pennexx from all publicly available sources and reflected such information

in Pennexx's stock price. Thus, the application of the fraud on the market theory here is

indisputable. Under these circumstances, all purchasers of Pennexx securities during the Class

Period suffered similar injury through their purchase of Pennexx securities at artificially inflated

prices and a presumption of reliance applies.

### b.     The Affiliated Ute Presumption

Under *Affiliated Ute,* in cases where there claims of securities fraud are premised on

material omissions or half truths reliance is presumed. *Johnston v. HBO Film Management, Inc.,*

265 F.3d 178, 192 (3rd Cir. 2001) (*quoting Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d

186, 202-03 (3rd Cir.1990) (holding that under *Affiliated Ute* "the district court did not err in

excusing plaintiffs from their burden of proving reliance on those nondisclosures and

half-truths." (internal quotations omitted)).  Under such circumstances "[a]ll that is necessary is

that the facts withheld be material in the sense that a reasonable investor might have considered

them important in the making of this decision.  This obligation to disclose and this withholding

of a material fact establish the requisite element of causation of fact." *Affiliated Ute,* 406 U.S.

128, 153-54.  The instant litigation concerns Defendants' omissions of the true circumstances

surrounding George Pearcy's departure and the true state of the Tabor Facility, thus this

presumption is appropriate. *Accord Sheehan v. Little Switzerland, Inc., 1*36 F.Supp.2d 301, 314

21

(D.Del. 2001); *Lachance v. Harrington,* No. CIV. A. 94-CV-4383, 1996 WL 210806, at \*4 n.8 (E.D. Pa. Apr. 30, 1996); *Friedman v. Lansdale Parking Authority*, No. CIV. 92-7257, 1993 WL 338174, at \*6 (E.D. Pa. Aug. 30, 1993).

Thus, because Pennexx's common stock traded in an efficient market throughout the Class Period and this action concerns material omissions, reliance is presumed under the fraud-on-the-market theory and under *Affiliated Ute*.

### (b)      A Class Action Is Superior To Numerous Individual Actions

A class action is superior to other available methods for the fair and efficient adjudication of this litigation within the meaning of Rule 23(b)(3) because (i) absent a class action certification, the Court is faced with the potential burden of litigating potentially thousands of individual lawsuits, all of which would arise out of the same set of operative facts alleged in the Complaint, (ii) the resolution of common issues alleged in one action will both produce an efficient use of judicial resources and result in a single outcome that is binding on all class members, (iii) any administrative difficulties in handling potential individual issues under the class action device are less burdensome than the problems which are likely to arise in handling the claims in thousands of separate actions, and (iv) because of the prohibitive expense of maintaining individual actions, denial of class certification here would effectively prevent numerous individuals from asserting their claims against Defendants and render meaningless the causes of action provided under the federal securities laws.  Accordingly, a class action is the superior way to litigate the claims alleged in this action. *See, e.g., Phillips Petroleum Co.*, 472 U.S. at 809 (class action plaintiffs pool claims that are uneconomical to litigate individually); *Eisenberg*, 766 F.2d at 785 ("Class actions are a particularly appropriate and desirable means to

22

resolve claims based on the securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device.'") (*quoting Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir. 1970)); *Rosen v. Fidelity Fixed Income Trust*, 169 F.R.D. at 301 ("class certification remains a desirable method of seeking redress under the securities laws, particularly where, as here, 'a large number of individuals [allegedly] have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf.'")

Thus, the alternatives to a class action are either no recourse for most of the class members or the inefficient litigation of hundreds of individual actions, which will indisputably burden the judicial system. Accordingly, the litigation of this action as a class action is superior to other available methods for the fair and efficient adjudication of this controversy and the requirements of Rule 23(b)(3) have been met.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order: (1) certifying a plaintiff Class as defined herein pursuant to Fed. R. Civ. P. 23(b)(3); (2)certifying this action as a class action on behalf of all persons who purchased the securities of Pennexx, Inc during the period from August 8, 2002 through June 13, 2003, inclusive, and were damaged thereby; (3) certifying Plaintiff Sean Fitzpatrick as the class representative, and (4) appointing Glancy Binkow & Goldberg LLP and Chimicles & Tikellis LLP as class counsel.

Dated: February 23, 2005          Respectfully submitted,

CHIMICLES & TIKELLIS LLP

By:_____ /s/ Kimberly M. Donaldson_____
     Steven A. Schwartz (PA ID No. 50579)
     Kimberly M. Donaldson (PA ID No. 84116)
     One Haverford Centre
     361 W. Lancaster Avenue
     Haverford, PA 19041
     Telephone: (610) 642-8500
     Facsimile: (610) 649-3633

     GLANCY BINKOW & GOLDBERG LLP
     Lionel Z. Glancy
     Michael Goldberg
     Avi N. Wagner
     1801 Avenue of the Stars, Suite 311
     Los Angeles, California 90067
     Telephone: (310) 201-9150
     Facsimile: (310) 201-9160

     **Co-Lead Counsel for Lead Plaintiff Sean Fitzpatrick
     and Counsel for the Winer Family Trust**

## CERTIFICATE OF SERVICE

I, Kimberly M. Donaldson, Esquire, hereby certify that I have on this date caused a copy

of the foregoing Motion for Class Certification to be served, via e-filing and via first class United

States mail, on the following:

Maurice R. Mitts, Esquire
Eric F. Spade, Esquire
Frey, Petrakis, Deeb,
 Blum, Briggs & Mitts, P.C.
1601 Market Street
26th Floor
Philadelphia, PA 19103

Edward J. Fuhr, Esquire
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Robert A. Nicholas, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301

Counsel for Defendants
 Michael Queen, Dennis Bland,
 Thomas McGreal and
 Pennexx Foods, Inc.

Counsel for Defendants
 Smithfield Foods, Inc.,
 Joseph W. Luter, IV and
 Michael H. Cole

Dated: February 24, 2005

KIMBERLY M. DONALDSON